IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:14-CR-61-1H

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| EMMANUEL JEROME GARDNER, ) | **RECOMMENDATION** |
| ) | |
| Defendant. ) | |

This matter is before the court on Defendant's motion to suppress [DE #108], which has been referred to the undersigned for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Government filed a response in opposition to the motion to suppress. To further develop the record, the undersigned conducted an evidentiary hearing on December 9, 2015, at which the Government and Defendant, with counsel, appeared. Accordingly, the matter is now ripe for decision.

## STATEMENT OF THE CASE

On September 23, 2014, a federal grand jury returned a seven-count indictment charging Emmanuel Jerome Gardner ("Gardner") with the following offenses: (1) conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (count one); (2) three counts of Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 (counts two, four and six);[1] (3) using, carrying, and discharging a firearm during and in relation to a crime of violence and aiding and abetting, in violation of 18 U.S.C. §§ 924(c)(1)(iii) and 2 (count three); and (4) using, carrying, and

---

[1] Count two also charges Gardner with aiding and abetting Hobbs Act robbery, in violation of 18 U.S.C. § 2.

brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (counts five and seven).

On October 16, 2015, Gardner filed the instant motion to suppress. Gardner contends that cellular telephone records obtained pursuant to a search warrant issued in connection with a state criminal investigation should be suppressed because: (1) the search warrant was not returned executed with an inventory of items seized, signed and sworn by an officer; (2) county magistrates in North Carolina cannot issue warrants for cell phone records or other information covered by the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*; and (3) probable cause did not exist for the issuance of the search warrant. The government argues that the warrant was supported by probable cause and there is no other basis for suppressing the evidence obtained from the warrant.

## STATEMENT OF THE FACTS

At the evidentiary hearing on Gardner's motion, the court heard the testimony of Detective Allen Seymour with the Lenoir County Sheriff's Office. Based upon the detective's testimony and documentary evidence, the undersigned makes the following findings of fact.

On November 25, 2013, officers received a call that two men had robbed a convenience store in La Grange, North Carolina. Detective Seymour was the first officer to respond to the scene. When Detective Seymour arrived, the store owner was outside the store speaking with a possible witness. The owner was the only person present in the store during the robbery, which was captured by surveillance cameras in the store. The owner was preparing to close the store and had laid the cash on the counter in order to count it when two suspects entered the store. Suspect #1 was a larger male, over six feet tall and weighing over two hundred pounds. Suspect #2 was smaller with a height of 5'6" to 5'10" and weighing one hundred and fifty pounds or less. Both suspects had their faces partially covered and appeared to be wearing hooded sweatshirts.

2

After entering the store, Suspect #1 pointed a handgun at the store owner and demanded that the owner "come over here." Suspect #2 jumped over the counter, gathered up the cash, and took cigarettes and cigars displayed behind the counter. The owner made his way to the back of the store and escaped. Gunshots can be heard on the video as the owner fled. Suspect #2 jumped back across the counter and both suspects left the store. The owner later reported that as he was fleeing, Suspect #1 shot at him.

Later that evening, an attempted robbery occurred at Lewis Grocery in Snow Hill, North Carolina, which is believed to have been committed by the same two suspects. Surveillance footage shows a Mazda circling through the parking lot, then leaving. A few minutes later, Suspects #1 and #2 are seen at the door of the grocery, which was closed. Suspect #2 shot the door with a handgun several times, but they were unable to gain entry and left.

On December 2, 2013, a man appearing to be Suspect #1 robbed the Fast Break Convenience Store in Snow Hill, North Carolina. Surveillance footage shows Suspect #1 entering the store and holding an employee at gunpoint demanding cash, cigarettes, and cigars. Officers believed the robber to be Suspect #1 because of his size, the face mask he was wearing, and the way he walked.

On December 10, 2013, video surveillance captured an individual officers believe to be Suspect #1 entering Crossroads Grocery in Kinston, North Carolina, armed with a handgun. The individual approached the clerk and demanded cash. After the robbery, the owner of Crossroads Grocery informed officers that he believed the robber had been in the store the day before the robbery. He explained that he had reviewed the surveillance footage from the day before when an individual came into the store and asked the price of Black and Mild cigars, then left without purchasing anything. The individual had not been wearing a mask.

Upon review of the footage, it was Detective Seymour's opinion that the individual in the video footage was Suspect #1 and that he was "casing" the store in preparation for the robbery. Detective Seymour testified that the unmasked male had no intention of buying anything. He made no gestures that he was going to make a payment and, as he was walking out, he was scanning the store's layout. It was also significant that he had inquired about Black and Mild cigars because this brand of cigars had been stolen in the prior robberies.

Still photographs were taken from the surveillance footage of Suspect #1 in a mask and of the unmasked man who had visited the day before the robbery. These photographs were released to the public in order to obtain information on possible suspects. Gardner contacted law enforcement officers concerning the press release and left a message requesting that he be called back at (252) 218-9539. Officers subsequently called and spoke to Gardner at that number. Gardner indicated that he was the unmasked man in the photograph taken from the surveillance footage. Gardner agreed to be interviewed, but later called back and said he could not come in for the interview. A background check on Gardner revealed previous armed robberies, possession of stolen goods, and first-degree burglary charges. Detective Seymour believed that Gardner and Suspect #1 looked alike, and he came to the conclusion that Gardner was Suspect #1 in all of the above robberies. Prior to Gardner's telephone call, officers had also received an anonymous call on the crime stopper's line that made Gardner a person of interest in the robbery investigations. Additionally, officers learned that Gardner was employed at Sanderson Farms, which issues dark blue or bright yellow coveralls to its workers along with boots and gloves. Based upon video footage, officers believe that Gardner may have been wearing items issued by Sanderson Farms during the robberies.

Detective Seymour sought a warrant for cellular telephone records maintained by Sprint in connection with the phone number provided by Gardner because he wanted to determine where the phone was located at the time of the robberies. Detective Seymour applied for and received a warrant authorizing seizure of the following information related to cellular number (252) 218-9539: text messages from November 24, 2013, through December 18, 2013; incoming and outgoing call records and cell site location information from November 24, 2013, through December 18, 2013; and subscriber information. Detective Seymour drafted the warrant application, as well as the accompanying affidavit. He did not include any information linking Gardner to cellular number (252) 218-9539, though he did explain to the magistrate about Gardner's telephone call and the number used by Gardner. At the hearing on Gardner's motion to suppress, Detective Seymour testified that the omission of information concerning the telephone number was inadvertent.

Following execution of a warrant, Detective Seymour typically inventories the property seized and completes a return, which he files with the county clerk of court. Although Detective Seymour believes he executed a return of the warrant at issue in this case, there is no record of any return being filed with the clerk of court. Detective Seymour has not been able to locate a copy of the inventory and return, and he does not recall whether he gave a copy of the inventory to anyone.

## **DISCUSSION**

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures and that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The Fourth Amendment's protections apply where an individual has "manifested a subjective expectation of privacy" in the property searched and society

5

"recognize[s] that expectation as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (internal quotation marks omitted).

Defendant's motion raises the threshold question of whether the Fourth Amendment applies to historical data concerning an individual's cell phone usage (*i.e.* cell site location information and call records) and subscriber information, as opposed to the cell phone's content (*e.g.*, text and email messages, videos and pictures). The government argues that a cell phone subscriber has no Fourth Amendment expectation of privacy in such information because the subscriber voluntarily conveys the information to a third-party cellular service provider, in this case Sprint.

Whether cell site location information is protected by the Fourth Amendment has been an issue of considerable debate, and there exists a split among the courts that have addressed the question. *See United States v. Pembrook*, 119 F. Supp. 3d 577 (E.D. Mich. 2015) (collecting cases). The Fourth Circuit was recently faced with this question in *United States v. Graham*, 796 F.3d 332 (2015), *rehr'g en banc granted*, No. 12-4659, 624 Fed. App'x 75 (Oct. 28, 2015). In *Graham*, a panel of the Fourth Circuit criticized a district court decision denying Fourth Amendment protections to cell site location information. Relying on Fourth Circuit precedent rejecting a claim of privacy in internet subscriber information, *see United States v. Bynum*, 604 F.3d 161 (4th Cir. 2010), the district court had determined that Fourth Amendment protections did not extend to cell site location information because the defendants had no legitimate expectation of privacy in the "business records kept in the ordinary course of business by [their] cellular provider." *United States v. Graham*, 846 F. Supp. 2d 384, 403 (D. Md. 2012), *affirmed*, 796 F.3d 332 (4th Cir. 2015), *rehr'g en banc granted*, No. 12-4659, 624 Fed. App'x (Oct. 28, 2015). On

6

appeal, the Fourth Circuit rejected the district court's analysis concerning the applicability of the Fourth Amendment, concluding:

> [T]he government invades a reasonable expectation of privacy when it relies upon technology not in general use to discover the movements of an individual over an extended period of time. Cell phone tracking through inspection of [cell site location information] is one such technology. It is possible that the [cell site location information] for a particular cell phone is not very revealing at all because, for instance, the phone has been turned off or it has made few or no connections to the cellular network. But the government cannot know in advance of obtaining this information how revealing it will be or whether it will detail the cell phone user's movements in private spaces. We hold, therefore, that the government engages in a Fourth Amendment search when it seeks to examine historical [cell site location information] pertaining to an extended time period like 14 or 221 days.
>
> . . . .
>
> We also disagree . . . that Appellants lacked a reasonable expectation of privacy in their [cell site location information] because the . . . records were kept by Sprint/Nextel in the ordinary course of business.
>
> . . . .
>
> Notably, the [cell site location information] at issue in this appeal details location information not only for those transmissions in which Appellants actively participated – i.e., messages or calls they made or answered – but also for messages and calls their phones received but they did not answer. When a cell phone receives a call or message and the user does not respond, the phone's location is identified without any affirmative act by its user at all – much less, "voluntary conveyance." . . . .

*Graham*, 796 F.3d at 349-55 (citations and footnote omitted). The *Graham* court concluded that the government's warrantless seizure of cell site information violated the Fourth Amendment, but the court nevertheless affirmed the district court because the records had been obtained in good-faith reliance on an order issued pursuant to the Stored Communications Act. On October 28, 2015, the Fourth Circuit granted the government's petition for rehearing *en banc*, *United States v. Graham*, No. 12-4659, 624 Fed. App'x 75 (4th Cir. Oct. 28, 2015), thereby vacating the panel's

7

decision in *Graham*. *See* 4th Cir. R. 35(c) ("Granting of rehearing en banc vacates previous panel judgment and opinion . . . .").

While the Fourth Amendment's applicability to cell site location information is a timely and pressing issue, the court need not reach that issue in this case. Even assuming, *arguendo*, that the cell phone information obtained from Gardner is protected, suppression is not warranted in this case. As in *Graham*, the officers here acted in good faith reliance on a warrant authorizing seizure of the subject information.

Generally, evidence seized in violation of the Fourth Amendment is subject to suppression under the exclusionary rule, the purpose of which is to deter future, unlawful conduct by law enforcement. *United States v. Andrews*, 577 F.3d 231, 235 (4th Cir. 2009). Because the deterrent purpose is not served in all circumstances, an exception exists where "evidence [is] obtained pursuant to a search warrant issued by a neutral magistrate . . . if the officer's reliance on the warrant was 'objectively reasonable.'" *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). "[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Leon*, 468 U.S. at 922 (internal quotation marks omitted). Thus, "the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant" are subject to suppression only where "'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Perez*, 393 F.3d at 460-61 (quoting *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002)).

The warrant at issue in this case is not without problems. There is no question that the circumstances set forth in Detective Seymour's affidavit, submitted in support of the warrant, established probable cause to believe that Gardner had engaged in criminal conduct, specifically

8

the December 10, 2013, armed robbery of Crossroads Grocery, located at 1520 Hugo Road in Kinston, North Carolina. What is missing from the affidavit, however, is any information from which it could be inferred that the cellular data to be seized was contraband or instrumentalities, fruits, or evidence of a crime. The affidavit does not state that Sprint cellular telephone number (252) 218-9539 was registered to Gardner or that Gardner was known to have used that number or any other cellular telephone number. In fact, the cellular telephone number is not at all mentioned in the affidavit, appearing in the application only for the purpose of identifying the information to be seized. Because Detective Seymour's affidavit contains no factual assertions to establish a nexus between Gardner (or any other individual engaged in criminal activity) and the cellular telephone number that is the subject of the warrant, the magistrate's probable cause determination is not supported by the four corners of the warrant application.

*Leon* counsels, however, that error such as exists in this case does not result in the exclusion of evidence obtained as a result of the warrant's execution. Rather, suppression remains the appropriate remedy only where: (1) the judicial official who issued the warrant was misled by information in an affidavit that the affiant knew to be false or would have known to be false but for the officer's reckless disregard of the truth; (2) the issuing official "wholly abandoned his judicial role" as a neutral and detached magistrate; (3) the warrant is based on an affidavit that is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so fatally deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923.

At the hearing of this matter, Detective Seymour testified that Gardner called the Sheriff's Office in response to still photos of the robbery suspects aired by a local news station. Gardner

9

left a voice message and a call back number of (252) 218-9539. Law enforcement officials subsequently called Gardner at that telephone number and spoke to him about coming in for an interview. Detective Seymour testified that he was aware of this information tying Gardner to the cellular telephone number when he applied for the warrant nine days later but that he inadvertently omitted it from the warrant application. Instead, his affidavit stated that "Gardner contacted Sheriff Chris Hill about his photo being on the local news" and "Gardner agreed to come to the [S]heriff's Office on 12/18/2013 for a[n] interview" but failed to show. (Aff. Det. Allen Seymour, Exhibit A to Mot. Suppress & Mem. Law [DE #108-1] at 5.) Detective Seymour testified that he explained to the issuing magistrate about Gardner's telephone call and the connection between Gardner and the telephone number that is the subject of the warrant.

Based on the evidence presented, the undersigned finds that probable cause existed to support the magistrate's issuance of a warrant for the cellular phone records but that the warrant application was deficient in that it failed to set forth the facts supporting probable cause. Consequently, this is not a case where the affidavit submitted for issuance of a warrant was "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *See Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975)). There being no evidence to support a finding that the magistrate abandoned his detached and neutral role, that the warrant was obtained as a result of any dishonesty or reckless disregard for the truth, or that the warrant failed to specify the particular place to be searched or things to be seized, the officers' reliance on the warrant issued in this case was objectively reasonable.

Gardner's argument that the magistrate was without authority to order production of the cellular records pursuant to the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.*, is a red herring. Section 2703 establishes procedures for the government to obtain records of electronic

communications and related information. It provides different protections based upon the type of records sought. *Compare* 18 U.S.C. § 2703(a), (b), (c). For example, disclosure of contents of wire or electronic communications created less than 180 days before the date of application requires a warrant based upon probable cause. *See* 18 U.S.C. § 2703(a). Section 2703(b) and (c) authorize disclosure of subscriber information and older communications based upon a lesser showing of specific and articulable facts demonstrating reasonable grounds to believe the information is relevant and material to an ongoing criminal investigation. In either event, § 2703 authorizes disclosure by "a court of competent jurisdiction." 18 U.S.C. § 2703(a), (b)(1)(A), (c)(1)(A), (d). "Court of competent jurisdiction" includes "a court of general criminal jurisdiction of a State authorized by the law of that State to issue search warrants." 18 U.S.C. § 2711(3)(B). In North Carolina, "[g]eneral jurisdiction for the trial of criminal actions is vested in the superior court and the district court divisions of the General Court of Justice." N.C. Gen. Stat. § 7A-270. "A magistrate is an officer of the district court," N.C. Gen. Stat. § 7A-170, and is empowered to "issue search warrants valid throughout the county," N.C. Gen. Stat. § 7A-273.

Gardner argues that the magistrate was without jurisdiction to issue the warrant in this case because it concerned records that were physically located outside the county. If Gardner's argument were correct, no North Carolina judicial official would ever be authorized to issue a warrant for cellular telephone records because the North Carolina General Statutes do not expressly authorize the issuance of warrants outside the State of North Carolina. *See* N.C. Gen. Stat. §§ 7A-243 (providing that "search warrants valid throughout the State may be issued by" North Carolina Supreme Court Justices, judges of the North Carolina Court of Appeals, and superior court judges), 7A-291 (authorizing district court judges to issue "search warrants valid throughout the district of issue"), 7A-273 (authorizing magistrates "[t]o issue search warrants valid

11

throughout the county"). The undersigned does not believe such a result was intended but acknowledges the possibility that technological advancements have outpaced legislative action in this field. Nevertheless, it is the undersigned's opinion that the warrant at issue in this case, even if issued in contravention of the magistrate's jurisdiction, was not so obviously deficient that a reasonably well-trained officer would have known of its illegality. Because the officers acted in good faith reliance on the warrant, suppression is not warranted based on any deficiencies in the warrant or the issuance thereof.

The court should also reject Gardner's claim that suppression is required because the executing officer failed to return the executed warrant to the clerk of court. Warrant return procedures are generally considered ministerial in nature. *United States v. Smith*, 914 F.2d 565, 568 (4th Cir. 1990). Absent a showing of prejudice, failure to comply with statutory return procedures should not result in suppression. *Id.* In this case, the property seized was information contained in business records maintained by Sprint. Execution of the warrant was akin to service of a subpoena or court order compelling production of documents by a third party, and it would appear that an inventory of information provided could be made without substantial difficulty. Defendant has failed to demonstrate prejudice resulting from the officer's failure to return the executed warrant, and the court should, therefore, deny his motion to suppress based upon this ground.

## **CONCLUSION**

For the foregoing reasons, the undersigned RECOMMENDS that Defendant's Motion to Suppress [DE #108] be DENIED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on the parties or their counsel of record. Each party shall have until April 18, 2016, to file written

Case 4:14-cr-00061-H   Document 132   Filed 04/01/16   Page 12 of 13

objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 1st day of April 2016.

_____
KIMBERLY A. SWANK
United States Magistrate Judge